# NO. 12-13-00045-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *THE STATE OF TEXAS FOR THE* | § | *APPEAL FROM THE* |
| *BEST INTEREST AND PROTECTION* | § | *COUNTY COURT AT LAW* |
| *OF W.W.* | § | *CHEROKEE COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

W.W. appeals from an order authorizing the Texas Department of State Health Services (the Department) to administer psychoactive medication-forensic. In one issue, W.W. asserts the evidence is legally and factually insufficient to support the trial court's order. We reverse and remand.

### BACKGROUND

On January 29, 2013, George Howland, M.D. signed an application for an order to administer psychoactive medication-forensic to W.W. In the application, Howland stated that W.W. was subject to an order for inpatient mental health services issued under Chapter 46C (not guilty by reason of insanity) of the Texas Code of Criminal Procedure. He testified that W.W. had been diagnosed with schizoaffective disorder, bipolar type, and alcohol abuse, and requested the trial court to compel W.W. to take psychoactive medications including antidepressants, anxoilytics/sedatives/hypnotics, antipsychotics, and mood stabilizers. According to Howland, W.W. refused to take the medications voluntarily and, in his opinion, W.W. lacked the capacity to make a decision regarding administration of psychoactive medications because he was disorganized in his thought process.

Howland concluded that these medications were the proper course of treatment for W.W. and that, if he were treated with the medications, his prognosis would be improved with less disorganization and rigidity in his thought process. Howland believed that, if W.W. were not

administered these medications, the consequences would be continued disorganized thought process, inability to follow rules at the hospital, and weight loss. Howland considered other medical alternatives to psychoactive medications, but determined that those alternatives would not be as effective. He believed the benefits of the psychoactive medications outweighed the risks in relation to present medical treatment and W.W.'s best interest. Howland also considered less intrusive treatments likely to secure W.W.'s agreement to take psychoactive medications.

On February 5, 2013, the trial court held a hearing on the application. At the close of the evidence, the trial court granted the application. On February 5, 2013, after considering all the evidence, including the application and the expert testimony, the trial court found that the allegations in the application were true and correct and supported by clear and convincing evidence. Further, the trial court found that treatment with the proposed medications was in W.W.'s best interest and that W.W. lacked the capacity to make a decision regarding administration of the medications. The trial court authorized the Department to administer psychoactive medications to W.W., including antidepressants, antipsychotics, mood stabilizers, and anxiolytics/sedatives/hypnotics. This appeal followed.

## SUFFICIENCY OF THE EVIDENCE

In his sole issue, W.W. argues that the evidence is legally and factually insufficient to support the trial court's order to administer psychoactive medication-forensics. More specifically, W.W. contends that the State failed to prove, by clear and convincing evidence, that he lacked the capacity to make a decision regarding administration of medication, and that treatment with the proposed medications was in his best interest.

## Standard of Review

In a legal sufficiency review where the burden of proof is clear and convincing evidence, we must look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its findings were true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We must assume that the fact finder settled disputed facts in favor of its finding if a reasonable fact finder could do so and disregard all evidence that a reasonable fact finder could have disbelieved or found incredible. *Id.* This does not mean that we are required to ignore all evidence not supporting the finding because that might bias a clear and convincing analysis. *Id.*

2

The appropriate standard for reviewing a factual sufficiency challenge is whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the petitioner's allegations. *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). In determining whether the fact finder has met this standard, we consider all the evidence in the record, both that in support of and contrary to the trial court's findings. *Id.* at 27-29. Further, we must consider whether disputed evidence is such that a reasonable fact finder could not have reconciled that disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266. If the disputed evidence is so significant that a fact finder could not reasonably have formed a firm belief or conviction, the evidence is factually insufficient. *Id.* If the court of appeals sustains an issue because the evidence is factually insufficient, it must reverse the judgment of the trial court and remand for a new trial. *In re C.S.*, 208 S.W.3d 77, 81 (Tex. App.–Fort Worth 2006, pet. denied) (citing *Glover v. Tex. Gen. Indem. Co.*, 619 S.W.2d 400, 401-02 (Tex. 1981)). A court of appeals has no jurisdiction to render judgment based upon an insufficient evidence issue. *Id*.

## Order to Administer Psychoactive Medication

A trial court may issue an order authorizing the administration of one or more classes of psychoactive medications to a patient who is under a court order to receive inpatient mental health services. TEX. HEALTH & SAFETY CODE ANN. § 574.106(a) (West 2010). The court may issue an order if it finds by clear and convincing evidence after the hearing that (1) the patient lacks the capacity to make a decision regarding the administration of the proposed medication, and (2) treatment with the proposed medication is in the best interest of the patient. *Id.* § 574.106(a-1) (West 2010). "Clear and convincing evidence" means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979). "Capacity" means a patient's ability to (1) understand the nature and consequence of a proposed treatment, including the benefits, risks, and alternatives to the proposed treatment, and (2) make a decision whether to undergo the proposed treatment. TEX. HEALTH & SAFETY CODE ANN. § 574.101(1) (West 2010). In making its findings, the trial court shall consider (1) the patient's expressed preferences regarding treatment with psychoactive medication, (2) the patient's religious beliefs, (3) the risks and benefits, from the perspective of the patient, of taking psychoactive medication, (4) the consequences to the patient if the psychoactive medication is not administered, (5) the prognosis for the patient if the patient is treated with psychoactive medication, (6) alternative, less intrusive treatments that are likely to produce the same results as treatment with psychoactive medication, and (7) less intrusive

3

treatments likely to secure the patient's agreement to take the psychoactive medication. *Id*. § 574.106(b) (West 2010).

**Hearing on Application**

At the hearing on the application, Howland testified that he was W.W.'s treating physician and that W.W. was currently under a court order for inpatient mental health services. He also stated that he completed the application for an order to administer psychoactive medication-forensic and swore that all the statements in the application were true and correct. Howland stated that W.W. was suffering from schizoaffective disorder, bipolar type, and alcohol abuse, and that he had verbally, or otherwise, refused to accept medication voluntarily. According to Howland, he believed that W.W. lacked the capacity to make a decision regarding the administration of psychoactive medication.

Howland testified that W.W. lacked capacity because he had been on Latuda to help with his psychosis, and had disorganized thoughts. He also testified that W.W. may have had paranoid thoughts about eating because he has lost twenty pounds since September 2012 and has a history of believing his food was poisoned. Although Howland admitted that it was possible for individuals with W.W.'s illness to have insight into, and control, their illness with medication, he did not believe that W.W. could make a rational decision because his dose of medication was too low. Howland testified that he had never seen anyone on such a low dose. He did not believe that W.W. had enough familiarity with the effect of his medication to determine if he felt better because he was not taking care of his room or following the rules of his unit.

Howland stated that W.W. was transferred to a locked unit the week before trial because the treatment team was concerned about his condition, weight loss, reclusiveness, and guardedness. He stated that W.W. refused to take an increase in his medication, Latuda, even after the treatment team talked with and encouraged him. Howland stated that W.W. had a very rigid thought process and refused to "consider the possibility" of increasing his medication. He admitted it was possible that W.W. did not believe he needed that drug or an increased dose, or that he could be paranoid, thinking that the drug was going to poison him, since he also had not been eating. However, he admitted that W.W.'s believing that the drug was poisoning him was speculation on his part. Howland stated that W.W. initially told the treatment team that he had never taken medication, but later stated that he had taken medication and suffered side effects. He attempted to reassure W.W. that he could try an increased dosage and that if he had issues, he could talk to the nursing staff about any side effects. But, he testified, W.W. "absolutely refused." Thus, according to Howland,

the treatment team had to make a decision to move W.W. to a locked unit because he was not following treatment recommendations.

Howland testified that the treatment team's decision to move W.W. into a locked unit included the fact that his room was "disheveled," he had trash in his locker, he was not displaying his badge properly on the grounds, he was not signing in and out of the unit, and he was on the internet at times when he was not supposed to be. He talked to W.W. about disobeying the rules and described W.W. as being very quiet and saying, at one point, that he did follow the rules. However, Howland testified that W.W. did not want to go to the dining room at all and that the treatment team explained that it was another rule to follow. He stated that W.W. told them he did not want to eat the food, but instead, wanted to obtain food from the canteen. Howland testified that after their discussion of the rules, W.W. kept his room better, but that his greater concern was that W.W. was not taking his medication as prescribed and had lost twenty pounds.

Howland testified that treatment with the medications set forth in the exhibit attached to the application was the proper course of treatment for W.W. and was in his best interest. He stated that if these medications were used, the benefit to W.W. would outweigh the risks. He also stated that W.W.'s stay at the hospital would be shorter if these medications are used. Howland was aware that in August 2011, W.W. attacked a man who subsequently died. At the time, he stated, W.W. was psychotic, heard voices, and had disorganized thoughts and paranoia.

W.W. testified that he disagreed with Howland's assessment of his ability to make a decision regarding administration of psychoactive medications. He remembered the treatment team talking to him regarding the rules that they believed he was not following. He testified that he "immediately" changed his behavior. W.W. stated that there was no trash in his locker, just a couple of brown bags that he subsequently removed. His "messy" room was two papers on the floor that he put in a sack. He stated that he wore his badge at all times after that conversation. W.W. testified that he had taken this medication before but initially forgot when he talked to Howland. He said he took an increased dose of Latuda while in jail and it "didn't agree with [him] at all." He informed Howland that an increased dose of Latuda made him hallucinate and gave him bad akathisia.[1] Moreover, W.W. testified that medications have never helped with his disorganized thinking, just hallucinations. At the time of trial, he stated that his thinking was good and

---

[1] "Akathisia" is defined as motor restlessness characterized by muscular quivering and the inability to sit still, often a result of chronic ingestion of neuroleptic drugs; intense anxiety at the thought of sitting down; and the inability to sit down. THE AMERICAN HERITAGE® STEDMAN'S MEDICAL DICTIONARY 26 (Houghton Mifflin Co. 1995).

5

organized. Thus, W.W. did not want to take an increased dose of this medication and attempted to tell Howland on several occasions.

W.W. stated that four other physicians determined he did not need an increased dose of Latuda, and that he would like to be evaluated by an independent physician. He stated that if an independent physician determined that he needed an increased dose of Latuda, he would agree because he believed Howland blew his issues "out of proportion."

**Analysis**

W.W. does not dispute that the evidence is legally and factually sufficient to show that he is under a court order to receive inpatient mental health services. Thus, we will consider whether the evidence is legally and factually sufficient to support a finding that he lacked the capacity to make a decision regarding the administration of psychoactive medications, and that treatment with the proposed medications was in his best interest. In the application, Howland stated that he believed W.W. lacked the capacity to make a decision regarding administration of psychoactive medications because he was disorganized in his thought process. Further, Howland determined that, if W.W. were not administered these medications, the consequences would be continued disorganized thought process, inability to follow rules at the hospital, and weight loss. At the hearing, Howland testified that W.W. had disorganized thoughts, had possible paranoid thoughts about food, initially refused to follow the rules, continued to disobey the rules regarding eating, and had lost twenty pounds since September 2012. He also testified that W.W. was moved into a locked unit because the treatment team was concerned about his condition, weight loss, reclusiveness, and guardedness.

Considering all the evidence in the light most favorable to the findings, we conclude a reasonable trier of fact could have formed a firm belief or conviction that W.W. lacked the capacity to make a decision regarding administration of the proposed medications and that treatment with the proposed medications were in his best interest. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.106(a-1); *In re J.F.C.*, 96 S.W.3d at 266. Therefore, the evidence is legally sufficient to support the trial court's order. *See In re J.F.C.*, 96 S.W.3d at 266.

Having determined that the evidence is legally sufficient to support the finding, we address factual sufficiency and consider all the evidence, both that in support of and contrary to the trial court's findings. *See In re C.H.*, 89 S.W.3d at 27-29. At the hearing, Howland admitted that W.W. kept his room better, but was still refusing to eat at the dining hall. Instead, he testified, W.W. wanted to eat from the canteen and had lost twenty pounds, necessitating his removal into a locked unit. However, Howland did not provide further information regarding W.W.'s weight loss and

6

eating habits. He admitted that W.W. "may" have had paranoid thoughts about eating because he had lost twenty pounds in approximately five months. The information regarding W.W.'s weight loss is not placed in any type of meaningful context so that we can determine whether W.W.'s weight loss did, in fact, result in ill health consequences. *See In re E.R.*, No. 06-10-00124-CV, 2011 WL 61878, at *5 (Tex. App.—Texarkana Jan. 7, 2011, no pet.) (mem. op.). For example, Howland did not testify that W.W.'s weight loss and desire to eat only in the canteen resulted in medical care for dehydration or malnutrition, or that it was detrimental to his health. Further, Howland did not testify how W.W.'s decision to eat only in the canteen and a twenty pound weight loss resulted in a lack of capacity to make a decision regarding administration of the proposed medications. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.106(a-1).

Regarding W.W.'s best interest, Howland also stated his belief that the medications listed in the exhibit attached to the application were in W.W.'s best interest, that he would likely benefit from the medications, and that the benefits of the psychoactive medications outweighed the risks in relation to present medical treatment and W.W.'s best interest. At the hearing, Howland admitted that W.W. informed him that he had suffered side effects from Latuda. W.W. testified that he had been given an increased dose of Latuda while in jail and stated that it "didn't agree with [him]," nor did it help with his disorganized thoughts. Further, W.W. stated that the increased dose of Latuda made him hallucinate and gave him bad akathisia. However, Howland still recommended that W.W. should be treated with an increased dose of that medication. From Howland's testimony, it is not apparent that he took into account W.W.'s past experiences when he prescribed an increased dose of Latuda. *See In re E.K.*, No. 12-06-00407-CV, 2007 WL 1492104, at *4 (Tex. App.—Tyler May 23, 2007, no pet.) (mem. op.); *In re D.H.*, No. 12-04-00181-CV, 2004 WL 2820896, at *4 (Tex. App.—Tyler Dec. 8, 2004, no pet.) (mem. op.).

W.W. stated his objections to taking medications or, more particularly, an increased dose of Latuda. The trial court is not required to defer to W.W.'s preferences, but must consider them. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.106(b). Because W.W. presented evidence to the trial court of his preference to avoid an increased dose of Latuda based upon its side effects and ineffectiveness, it is presumed that the trial court gave his preferences due consideration. As noted above, W.W. preferred to be treated with a low dose of Latuda. *See id*. From his perspective, the risks of these medications and an increased dose of Latuda outweighed the benefits. *See id*. Further, the consequences of taking these medications, or more particularly, an increased dose of Latuda, could be severe, resulting in hallucinations and severe akathisia. *See id*.

7

Based upon W.W.'s reasoned refusal to take the proposed medications and increased dose of Latuda because of his history of hallucinations and akathisia, we conclude that the State failed to introduce clear and convincing evidence of W.W.'s lack of capacity to make a decision regarding administration of these medications or that these medications were in his best interest. The disputed evidence is so significant that the trial court could not reasonably have formed a firm belief or conviction that W.W. lacked the capacity to make a decision regarding administration of the proposed medications or that treatment with the proposed medications was in his best interest. *See id*. § 574.106(a-1); *In re J.F.C*., 96 S.W.3d at 266. Thus, in considering all the evidence, the evidence is factually insufficient to support the trial court's finding based upon Section 574.106(a-1) of the Texas Health and Safety Code. Accordingly, we sustain W.W.'s sole issue as to factual sufficiency.

### DISPOSITION

Based upon our review of the record, we conclude that the evidence is factually insufficient to support the trial court's order to administer psychoactive medication-forensic. Therefore, we *reverse* the trial court's order and *remand* the case for further proceedings.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered June 19, 2013.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

8



# COURT OF APPEALS

## TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JUNE 19, 2013**

**NO. 12-13-00045-CV**

**THE STATE OF TEXAS FOR THE BEST
INTEREST AND PROTECTION OF W.W.**

Appeal from the County Court at Law
of Cherokee County, Texas. (Tr.Ct.No. 40,191)

THIS CAUSE came to be heard on the appellate record and the briefs filed herein, and the same being considered, it is the opinion of this court that there was error in the order as entered by the trial court below and that the same should be reversed and judgment remanded.

It is therefore ORDERED, ADJUDGED and DECREED by this court that the trial court's order to administer psychoactive medication-forensic be, and the same is, hereby **reversed** and the case **remanded for further proceedings**; and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*